## AFFIDAVIT OF DEA SPECIAL AGENT BRIAN TOMASETTA

I, Brian Tomasetta, being duly sworn, depose and state as follows:

1. I am a Special Agent with the United States Drug Enforcement Administration ("DEA"). I have served in this capacity for twenty years. I am currently assigned to DEA's Boston, Massachusetts Field Division. Since September 2006, I have been assigned to the Financial Investigations Team ("FIT") at DEA, and have been concentrating primarily on drug trafficking and money laundering investigations.

2. I received a Bachelor of Science Degree in Criminal Justice from Westfield State College in Westfield, Massachusetts in 1988. I was a Vermont State Trooper for approximately two years. In 1990, I graduated from DEA's Basic Agent Training Course at the Federal Bureau of Investigation Academy in Quantico, Virginia. This fourteen-week curriculum consisted of the study of drug enforcement relating to narcotics violations, conspiracy, drug identification, surveillance, undercover operations, and other drug-related subjects.

3. During my law enforcement career, I have received specialized training regarding the activities of narcotics traffickers, including the methods used to package, store, and distribute narcotics, and the methods used by narcotics traffickers to conceal and launder the proceeds of narcotics trafficking activities. In addition to my training, I have had extensive experience in the investigation of narcotics traffickers. I have debriefed more than 100 defendants, informants, and witnesses with personal knowledge regarding narcotics trafficking organizations. I have personally participated in all aspects of narcotics trafficking investigations, including conducting surveillance, using confidential informants, acting in an undercover capacity, and conducting court-authorized interceptions of wire and electronic communications.

4. Based upon my training and experience, I am familiar with the methods of operation of narcotics traffickers, including their use of threats, intimidation, and violence against government witnesses and cooperating defendants and informants. Specifically, I am aware that narcotics traffickers and their associates will often threaten violence, both implicitly and explicitly, against perceived and actual government cooperators to prevent testimony and other cooperation with the government. In addition, I am aware that narcotics traffickers and their associates will also use violence against potential witnesses in order to thwart investigations and prosecutions.

5. I make this affidavit in support of a criminal complaint charging defendant Trevor A. WATSON[1] with: (1) attempting to kill another person with intent to: (a) prevent the attendance or testimony of any person in an official proceeding, in violation of 18 U.S.C. § 1512(a)(1)(A); and (b) prevent the communication by any person to a law enforcement officer or judge of the United States of information relating to the commission or possible commission of a Federal offense or a violation of conditions of probation, parole, or release pending judicial proceedings, in violation of 18 U.S.C. § 1512(a)(1)(C); and (2) attempting to kill another person with intent to retaliate against any person for providing to a law enforcement officer any information relating to the commission of a Federal offense or a violation of conditions of probation, supervised release, parole, or release pending judicial proceedings, in violation of 18 U.S.C. § 1513(a)(1)(B).

6. The information contained in this affidavit is based on my personal knowledge and

---

[1] WATSON has a significant and violent criminal history. In addition to numerous state arrests for assault and battery and drug and gun-related charges, WATSON was convicted of the following felonies: (1) Possession of a Class B controlled substance, Roxbury District Court, in 2008; (2) Assault and Battery, Suffolk Superior Court, in 2000; (3) Felon in Possession of a Firearm, U.S. District Court, District of Massachusetts, 1995; (4) Armed Robbery, Suffolk Superior Court, 1986; and (5) Robbery, Roxbury District Court, 1986.

observations during the course of this investigation, information conveyed to me by other law enforcement officials and cooperating sources, and my review of records, documents, and other physical evidence obtained during this investigation. This affidavit is being submitted for the limited purpose of establishing probable cause to believe that WATSON has committed the above-described offenses. Accordingly, I have not included each and every fact known to me and other law enforcement officers involved in this investigation. I have set forth only the facts that I believe are needed to establish the requisite probable cause for the criminal complaint against WATSON.

7.     On February 27, 2010, at approximately 2:30 p.m., an individual currently cooperating with the government (hereinafter, "CW") was stabbed multiple times by a then-unidentified male outside of Ann's Unisex Barbershop, 996 Tremont Street, Boston, Massachusetts (hereinafter, "the Barbershop"). The assailant fled the scene prior to the CW's transport to Boston Medical Center. The injuries to the CW were life-threatening. The CW was stabbed approximately eight separate times and was in critical condition. The CW required emergency surgery because of the stab wounds.

8.     On February 28, 2010, I and other agents met with the CW at Boston Medical Center. According to the CW, on February 27, 2010, at approximately 1:30 p.m, the CW went to the Barbershop. At approximately 2:30 p.m., the CW observed the assailant on the street and they acknowledged each other. After acknowledging each other, the assailant approached the CW, put his arm around the CW's neck and shoulders, and stabbed the CW repeatedly, saying as he did, "you wanna talk, you wanna talk."

9.     During the February 28, 2010 interview, the CW described the assailant as a light to medium-complexioned male in his late 30's to early 40's. According to the CW, the assailant was

short with a stocky build and spoke English with a Spanish accent.[2]

10.     Two days later, on March 2, 2010, I and other agents met with detectives of the Boston Police Department (hereinafter, "BPD"), who advised me that they had interviewed multiple individuals at or near the scene of the stabbing. One such individual stated that the assailant was a black non-Hispanic male, 30-35 years old, approximately 5 feet, 5 inches tall, with a husky build and wearing gold-rimmed glasses, grey pants, and a black jacket.[3]

11.     On March 2, 2010, BPD detectives prepared a photo array based on the physical description of the assailant. At Boston Medical Center, a BPD detective and I then showed the CW eight consecutive photographs and asked whether the CW recognized the assailant. From the CW's hospital bed, the CW identified the fifth photograph as the person who attempted to kill him outside the Barbershop on February 27, 2010. The CW indicated his recognition of the assailant by giving a thumbs-up gesture at the fifth photograph as his injuries prevented him from talking. The CW then signed and dated the fifth photograph. The fifth photograph is a BPD booking photograph for WATSON.

12.     In June 2008, in the case of United States v. Camacho et. al., 08-10168-NG, eight defendants, including the CW, were indicted by a federal grand jury in the District of Massachusetts and charged with, among other things, conspiracy to possess with intent to distribute cocaine

---

[2] When I met with the CW on February 28, 2010, the CW was in obvious physical distress from the stabbing injuries; in addition, while conversing with and observing the CW, it was clear that the CW was very fearful and hesitant to discuss the incident. It is my belief that the CW was fearful and hesitant due to WATSON's reputation for violence.

[3] According to both Massachusetts Registry of Motor Vehicle and Criminal History forms, WATSON is either 5 feet, 6 inches, or 5 feet, 7 inches, and weighs 225 pounds.

(hereinafter, "Camacho Indictment").[4] The Camacho Indictment followed a months-long investigation that included physical surveillance, information from confidential sources and undercover agents, and Title III electronic surveillance. In connection with the investigation, on April 24, 2008, agents seized twenty-seven kilograms of cocaine in Plainville, Massachusetts. In addition, agents seized close to $500,000 in cash from Camacho's residence. The seizures, arrests, search warrants, and post-arrest statements confirmed that defendant Camacho was the head of an entrenched Colombian drug trafficking organization operating in the greater-Boston area.

13. Although WATSON is not charged in the Camacho Indictment, a confidential source (hereinafter, "CS") in that investigation (not the CW) told law enforcement that in 2007 s/he met the CW through WATSON for the purpose of supplying the CW with cocaine and marijuana. I subsequently learned that Camacho was the source of supply of cocaine and marijuana to the CS. The CS also stated that s/he had provided cocaine and marijuana to WATSON in approximately 2007 that was sourced from Camacho. In a meeting with law enforcement in 2008, the CW told law enforcement that WATSON had introduced the CW to both the CS and Camacho for the purpose of finding a drug supplier for the CW.

14. Subsequent to the CW's arrest in the Camacho case, the CW began cooperating with law enforcement. To date, however, the government has not provided any discovery with respect to the CW's cooperation in the Camacho Indictment. However, while detained after the CW's arrest in the Camacho Indictment, the CW wrote a letter to BPD homicide detectives detailing the involvement of certain individuals in a number of unsolved murders in Suffolk County. In

---

[4] The Camacho Indictment is currently scheduled for trial on April 26, 2010 before the Honorable U.S. District Judge Nancy Gertner.

connection with homicide prosecutions in 2008 and 2009 in the cases of <u>Commonwealth v. Tonieka Britt</u> and <u>Commonwealth v. Alexander Bolling</u>, in which both Britt and Bolling were ultimately convicted of first-degree murder, a portion of the CW's letter to BPD regarding these murders was produced to defendants Britt and Bolling. In addition, the Assistant District Attorney provided the CW's name to defense counsel for Britt and Bolling.

15. I, Brian Tomasetta, having signed this affidavit under oath, state that its contents are true and correct to the best of my knowledge, information and belief.

*Brian Tomasetta*
Brian Tomasetta
Special Agent, DEA

Sworn before me this 3rd day of March 2010.

*Marianne B. Bowler USMJ*
HON. MARIANNE B. BOWLER
UNITED STATES MAGISTRATE JUDGE